ADAMS EXPRESS CO. v. ADAMS.

(Circuit Court of Appeals, Eighth Circuit. March 3, 1908.)

No. 2,595.

1. COURTS—FEDERAL COURTS—JURISDICTION—SUSTAINED IF ANY PART OF RECORD DISCLOSES REQUISITE FACTS.

The jurisdiction of a national court may not be renounced or denied where the facts requisite to confer it appear directly, or by just inference, from any part of the record.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 816–818.]

2. REMOVAL OF CAUSES—ADMISSION THAT DEFENDANT IS CORPORATION OR JOINT-STOCK COMPANY OF A STATE IS AN ADMISSION THAT IT IS A CORPORATION AS ALLEGED.

The plaintiff averred in his petition that the defendant was a corporation organized under the laws of the state of New York. The defendant in its petition for removal alleged, and in its answer expressly admitted, that it was "a corporation or joint-stock company organized and existing under and by virtue of the laws of New York."

*Held*, the answer admitted that the defendant was a corporation organized under the laws of New York, and hence the citizenship of the defendant in that state sufficiently appeared from the pleadings.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Causes, § 92.]

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—COLLISION ON STREET — SUFFICIENCY OF EVIDENCE FOR JURY.

There was the testimony of two witnesses, which was contradicted by others, that as the plaintiff, a boy about 18 years of age, was riding a bicycle along the south side of an east and west street within 10 feet of the line of its south curb across a north and south street, a driver of a horse harnessed to a covered delivery wagon who had been driving west near the middle of the east and west street toward the opposite side of the crossing, and had been examining some article in the wagon while the reins were hooked up to the cover thereof, seized one of the reins as he came near the crossing and turned the horse, which was then trotting, sharply to the south, that after the horse had gone a few feet in that direction he grasped the other rein and turned the horse sharply to the west again, and that after the horse had advanced a few feet in that direction he seized the first rein and suddenly turned the horse to the south again, when the south shaft of the wagon struck the boy who had been riding along close to the line of the south curb and seriously injured him. The driver testified, among other things, that he intended to take his team south into the cross-street and that he saw the bicycler approaching when he was at least half a block distant.

*Held*, there was substantial evidence for the jury that the driver failed to fully discharge his duty to exercise reasonable care to avoid a collision with the bicycler, and that his negligence in causing the team to pursue its zigzag and fluctuating course just before the collision was the proximate cause of the accident, and the evidence that the bicycler was guilty of contributory negligence was not so clear that it was the duty of the trial court to instruct the jury that he was guilty thereof.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Nebraska.

Charles J. Greene (Ralph W. Breckenridge, on the brief), for plaintiff in error.

Albert W. Jefferis (Frank S. Howell, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge.    Within a few feet of the southeast corner of St. Mary's avenue and Twenty-Sixth street in the city of Omaha, the plaintiff below, who was then about 18 years of age, while he was riding a bicycle toward the east along the south side of St. Mary's avenue, collided with the south shaft of a covered wagon to which a horse that one of the servants of the defendant was driving toward the west on that street was harnessed.    Adams was seriously injured by the collision, and by his next friend he sued the company for negligence, and recovered a judgment.

The suggestion is made in this court for the first time that the court below was without jurisdiction of the action, because the requisite diversity of citizenship does not appear from the record.    But the plaintiff alleged in his original petition which he filed in the state court that the Adams Express Company was a corporation organized under the laws of New York.    The defendant in its petition for removal averred that the plaintiff and his next friend were citizens and residents of the state of Nebraska, and that the defendant company was a corporation or joint-stock company created under the laws of the state of New York.    It subsequently filed an answer in which it expressly admitted that it was a corporation or joint-stock company organized and existing under the laws of the state of New York.    Under a familiar rule of construction this was an admission that the Adams Express Company was a corporation as alleged in the original petition, and by these pleadings the requisite diversity of citizenship sufficiently appeared. The jurisdiction of a federal court may not be renounced or avoided where the facts requisite to confer it appear either directly, or by just inference, from any part of the record.    Howe v. Howe & Owen Company, 154 Fed. 820, 822, 83 C. C. A. 536, 538.

At the close of the evidence the court below refused to grant a request of the defendant to instruct the jury to return a verdict in its favor, and its counsel insist that this ruling was error (a) because the act of the defendant's driver in turning into Twenty-Sixth street and the ensuing collision was not the proximate cause of the plaintiff's injury; (b) because there was no substantial evidence that his injury could have been reasonably anticipated from his act by the driver by any ordinary forecast; (c) because the negligence of the plaintiff in riding his bicycle at the rate of five or six miles an hour toward the company's wagon, which he saw coming towards him, without taking suitable precautions to avoid a collision, was the proximate cause of his injury;  and (d) because if the plaintiff's injury did not result proximately as a matter of law from his own negligence, it was caused by a mere accident.    The facts disclosed by the evidence which are relevant

to this issue are substantially these: St. Mary's avenue was 46 feet wide from curb to curb and it extended from east to west. Twenty-Sixth street was 15 feet wide from curb to curb, and it extended from St. Mary's avenue south. Both streets were paved with asphalt. There was some sand which had been deposited for building purposes on the south 10 or 15 feet of St. Mary's avenue 25 or 50 feet east of Twenty-Sixth street, and there was probably a horse and wagon standing close to the south curb of St. Mary's avenue about 10 feet east of Twenty-Sixth street, although some of the witnesses testified that there was no team at that place. There were six eyewitnesses of the accident. The plaintiff and two workmen, who were on the south side of St. Mary's avenue within 30 or 40 feet of the place of the collision, testified to the effect that Adams was riding east in front of the block west of Twenty-Sixth street along the south side of St. Mary's avenue within 10 feet of the south curb at a speed of from 5 to 7 miles an hour, as the serv-ant of the Adams Express Company drove his team on a trot in a west-erly direction in front of the block east of Twenty-Sixth street along St. Mary's avenue, that the driver had the reins hooked up in the cover of the wagon, and that his attention was given to a satchel which hung upon his shoulder by a strap, or to a package, or to some other article in the wagon, that as he approached Twenty-Sixth street he seized one rein and turned the horse sharply to the south, that after the horse had proceeded a few feet in that direction he seized the other rein and turn-ed the horse sharply to the west again, that after the horse had travel-ed a few feet in that direction he again seized the first rein, and turned the horse again sharply to the south, and that then at a place within 15 or 20 feet of the southeast corner of the two streets the south shaft of the wagon struck the face of the boy who was riding close to the line of the south curb of the avenue extended across Twenty-Sixth street, and was trying to dodge around the team. On the other hand, the driver, and two witnesses who were riding toward the west on St. Mary's avenue about 100 or 125 feet behind the boy, testified that the boy was riding east along the south side of St. Mary's avenue within about 10 feet of the south curb as he approached Twenty-Sixth street, that he was looking to the south, and was not aware of the approach of the team until the driver shouted to him to look out just before he ran into the shaft, that the lines were not hooked up to the top of the wagon, that the driver was not examining his satchel, or anything in the wagon, but that he held one rein in each hand and was driving west on St. Mary's avenue on or just north of the middle of the street, that he did not turn his horse sharply first to the south, then to the west and then to the south, but that as the boy approached oblivious of the team the driver stopped his horse and shouted to him, but that it was too late, and that as the team stood still near the middle of the street the boy ran his face against the south shaft of the wagon and was injured. All the witnesses agreed that there was ample space for the boy to pass between the defendant's team and the sand and team on the south side of the street, if the facts were as the defendant's witnesses declared them to be, and, if they were so, the defendant was undoubtedly enti-tled to a verdict in its favor. The court in effect so instructed the jury,

submitted to them the question whether the facts were as testified by the plaintiff's or by the defendant's witnesses, and they found this issue in favor of the plaintiff. The positive testimony of the two witnesses who were nearest to the accident, and the surrounding circumstances established, constituted evidence in support of that conclusion too substantial to have permitted the court below to have withdrawn that issue from the jury, and the question now is whether, conceding the facts to have been as the witnesses for the plaintiff testified, it was nevertheless the duty of the trial court to instruct the jury to return a verdict for the defendant.

The driver testified that he saw the plaintiff approaching on his bicycle along the south side of the street when he was at least half a block distant. He also testified that he intended to turn into Twenty-Sixth street and to deliver a package upon that street. He knew that he was going to take his team into Twenty-Sixth street before he turned his horse toward that street, and the boy did not know it. The boy came on, and the driver turned his horse sharply to the south. The plaintiff might have inferred, doubtless he would have inferred if the horse had continued in that direction, that the driver intended to take the team into Twenty-Sixth street, and he might and doubtless would have turned his bicycle to the left, and have safely passed the team on the north side. But before the horse had traveled many feet, the driver sharply turned him to the west and he proceeded on in that direction. The plaintiff was then near the horse and he may have inferred, for that was a rational inference, that the driver intended to take the team on toward the west along St. Mary's avenue. He rode on close to the line of the south curb to pass the team on the south side when, just as he was about to pass it, the driver again turned the horse suddenly to the south and the collision occurred. These facts present a substantial basis from which any man of ordinary intelligence and prudence in the circumstances of this driver might, and probably would, have anticipated, and from which this driver ought to have foreseen, that a collision and injury were the natural and probable consequences of driving his team in such a zigzag, fluctuating, and erratic course in the face of an approaching bicycler whom he saw and whom he expected to pass him, and they were sufficient to sustain a verdict that the acts of the driver were negligent and were the proximate cause of the injury. This driver, with his knowledge that he intended to turn his team into Twenty-Sixth street, and that the plaintiff was coming toward him along the south side of St. Mary's avenue and was about to cross Twenty-Sixth street, owed this boy the duty to exercise ordinary care to avoid a collision. The full discharge of that duty required him to either keep his team out of the straight course, which he knew the plaintiff was pursuing, or by directing his horse steadily in a direction that would cross the bicycler's course, or by some other adequate signal, to give him reasonable warning that he intended to drive his team across the bicycler's evident course and into Twenty-Sixth street. His direction of his team in its suddenly changing course failed to discharge this duty.

On the other hand, the evidence of the alleged contributory negligence of the plaintiff was not so plain and conclusive that any duty was

imposed upon the court to instruct the jury that he was guilty of negligence fatal to his case. He testified that he did not know and that he did not infer from the course of the team that the driver intended to turn it into Twenty-Sixth street, that he believed from his movements that he intended to drive it on along St. Mary's avenue toward the west, nor in view of the sharp and sudden turn of the horse back into its westward course after the driver had first turned him to the south can that inference be said to have been an unreasonable conclusion. In reliance upon it the plaintiff continued upon his course close to the line of the south curb of St. Mary's avenue until the driver suddenly turned his horse sharply to the south again when it was too late for the plaintiff to go to the north, and the shaft unfortunately struck him as he was trying to dodge around the team on the south. The duty was imposed upon the plaintiff to exercise reasonable care to avoid a collision with this team, but if the facts were as the jury have lawfully found them to be, they fail to establish either by direct evidence or by rational inference that he failed to discharge that duty. Apparently he would have passed the team in safety if the driver had not suddenly swung the horse into his course at the instant he was about to pass it, and when it was too late by any care or diligence to escape the collision.

Finally, there was substantial evidence that the proximate cause of the injury was not a mere accident, because there was such evidence that the negligence of the defendant's driver was its proximate cause.

Many objections were interposed by counsel for the plaintiff to the defendant's exception and to its assignment of errors. These objections have not been considered, nor have the questions they present been decided, because the result of the case upon a consideration of the merits is the same that it would have been if those objections had been sustained. There was no error in the trial of the 'case, and the judgment below must be affirmed.

It is so ordered.